ADRIAN STATE BANK, Appellant, v. AUGUST EICHMEIER and KATIE EICHMEIER, Appellees.

**Negotiable Instruments:** EVIDENCE: MATERIALITY. Where the wife, in an action upon a note alleged to have been signed by herself

and husband, filed a separate answer charging fraud in obtaining her signature, that the note was secured by a second mortgage obtained by plaintiff as a result of proceedings to foreclose a first mortgage, that the mortgage had been fraudulently altered and that she, who was at most a surety, was discharged from liability, evidence concerning the value of the land mortgaged was immaterial and prejudicial.

Same: WITHDRAWAL OF ISSUES: INSTRUCTIONS. Where there was evidence in support of three separate defenses interposed to a suit upon a note, an instruction that there was no evidence in support of the allegations of the answer except as to one of the defenses, and that the jury was limited in their consideration to that defense, was not sufficient to withdraw the issues raised by the other two defenses from the jury, but the court should have specifically referred to evidence in support of the other two defenses and instructed the jury not to consider it.

Appeal: CROSS-ASSIGNMENTS OF ERROR. Cross-assignments of error by the appellee, entirely separate from matters raised by appellant's appeal, will not be reviewed, in the absence of a separate appeal by the appellee.

Same. The appellate court will not rule upon matters not properly appealed from, merely to settle abstract propositions.

*Appeal from Franklin District Court.*—HON. F. D. LETTS, Judge.

WEDNESDAY, NOVEMBER 12, 1913.

ACTION upon a promissory note, for the sum of $3,000, made by defendants to plaintiff on February 15, 1908, due one year after date, with 8 per cent. interest from date. Defendants are husband and wife and now residents of the state; and an attachment was sued out against them which was levied upon certain real estate in Franklin county. Defendants each appeared and filed separate answers. Kate Eichmeier pleaded that her signature to the note was obtained by fraud and deceit; that the note was secured by a mortgage upon certain real estate in the state of Minnesota; and that her signature to both note and mortgage was secured

by fraud and misrepresentation. She also pleaded that she was a surety on the note and that plaintiff fraudulently altered a mortgage which she and her husband had given as additional security for the loan, thus releasing the security held by it, thereby discharging her as a surety on the note. Her codefendant admitted the execution of the note, but pleaded that it had been discharged by reason of plaintiff's redemption from the foreclosure sale of a mortgage held by a stranger upon land which he and his codefendant had mortgaged to secure the note in suit. Plaintiff demurred to the answer of August Eichmeier, and this demurrer being sustained, and defendant failing and neglecting to plead further, judgment was rendered against him for the amount of the note with interest and costs. Upon the issues joined by Kate Eichmeier, the case was tried to a jury resulting in a verdict and judgment for this defendant, and plaintiff appeals. Defendant did not appeal, but has filed a brief, in which she makes what she calls ''cross-assignments of error by appellee.'' It is manifest that, in the absence of an appeal by her, these cross-assignments cannot be considered, save, perhaps, in determining whether or not any errors committed by the trial court against the plaintiff were without prejudice. *Reversed.*

*Stipp & Perry* and *David Evans,* for appellant.

*A. J. Daley* and *John M. Hemingway,* for appellee Katie Eichmeier.

DEEMER, J.—The case went to the jury upon a single affirmative issue pleaded by the defendant Katie Eichmeier, who is the only defendant in the case and the only party in interest. That defense was, in substance:

. . . That at the time the note sued on was executed by A. Eichmeier, the same was not signed by her (Katie

Eichmeier); that at the time said note was executed the same was secured by a mortgage executed upon certain lands in Nobles county, Minn., subject to a prior mortgage of $1,500; that some time in May, 1909, or possibly June, the said first mortgage became due, and there was accrued interest thereon to the extent of $37.50; that then and there the said A. Eichmeier arranged with one Brickson, the cashier of plaintiff bank, who was acting as agent for one C. W. H. Beyer, the owner of the first mortgage, to procure an extension of the same upon the condition that the said A. Eichmeier would execute a note of $65 to the plaintiff in this case, with this defendant as surety, and that said Brickson caused an agreement for an extension to be drawn up and signed by said Eichmeier and also the said note of $65 to be thus signed; that at the time said contract and note were drawn up the defendant Katie Eichmeier was not present, but, the matter being explained to her, she consented to the arrangement and agreed to sign the said $65 note and the agreement for extension; that pursuant to said agreement she called at the bank of the plaintiff and notified said Brickson that she had come to sign the $65 note and necessary papers for the extension of the $1,500 mortgage; that thereupon she signed the $65 note and also the agreement for extension; that, after she had signed these two papers, the said Brickson shoved over to her another paper which he told her was necessary for her to sign in order to complete the deal; that she signed the same without reading it, supposing it to be one of the papers connected with the extension of said loan, but she now believes and charges the fact to be that said Brickson, well knowing that she would not sign the $3,000 note, when comprehending that she was so doing, falsely represented to her that the paper was one in connection with the $1,500 note, when in truth and in fact it was the $3,000 note sued in this case.

The trial court instructed that the burden was upon her to prove by a preponderance of the evidence: "1. That she signed said note supposing it to be one of the papers connected with the extension of the $1,500 note. 2. That said Brickson, at the time she executed the note sued in this case, made some false representation by word, or conduct, that the

note now sued was a paper connected with the extension of the $1,500 note. 3. That she did sign the note sued in this case relying upon such false representations so made by said Brickson.''

For a reversal of the judgment entered upon a verdict for the defendant, it is contended that the court erred in admitting certain testimony, in refusing to give certain instructions asked, and in giving certain instructions on its own motion, and it is also contended that the court erred in overruling plaintiff's motion for a new trial.

To a correct understanding of the matters presented, it will be necessary to refer to some of the facts and to some of the issues presented by defendant in her answer which were not submitted to the jury. Plaintiff is a bank doing business in the state of Minnesota, and defendant August Eichmeier, who was and is a resident of the same state, was a customer of the bank. Eichmeier was largely indebted to the bank, and the cashier thereof, one Brickson, was endeavoring to get this indebtedness secured. The debtor owned eighty acres of land in the state of his residence, which land was incumbered by a mortgage executed to one Beyer, to secure the sum of $1,500. Plaintiff was insisting that Eichmeier and his wife give the bank a second mortgage upon this land to secure the indebtedness due it. After some negotiations and some time in the year 1908, a note and second mortgage were prepared, and they each purport to have been executed on February 15, 1908; the mortgage being acknowledged by both husband and wife on the —— day of March, 1908. The note was for $3,000 and is the one in suit. The mortgage purports to secure this note and was made subject to the Beyer mortgage. Among other defenses, Katie Eichmeier pleaded that she did not sign the note until some time in June, 1909, when the Beyer mortgage became due; that her signature was obtained by fraud and deceit at the time she was executing some other papers in order to secure an extension of time on the Beyer note; that she did not inten-

tionally sign the note in suit; and that whatever she did sign
she thought were necessary papers to secure an extension of
the Beyer indebtedness. She also averred that before sign-
ing the note in suit she inquired of the plaintiff bank as to
the amount of her husband's indebtedness and was informed
that it did not exceed the sum of $3,067; that, acting on this
belief, she signed her husband's note as surety only; that the
land upon which the mortgage to secure the note was ex-
ecuted was worth at that time more than $6,000 and was
ample security for all the indebtedness secured by mortgages
thereon. She also averred that her husband was indebted in
much larger amounts than the bank represented and that it
falsely stated the amount of the indebtedness in order to
induce her to sign the note. What is called the third count
of her answer pleads the defense which was submitted to the
jury. In another ''count'' (1) she pleaded a foreclosure of
the Beyer mortgage and a sale of the property to Beyer there-
under; that thereafter plaintiff caused notice to be filed that
it would redeem from the foreclosure sale; that on August
29, 1911, an officer and director of the plaintiff bank took an
assignment from Beyer of his certificate of foreclosure sale,
paying him therefor the full amount due him upon his mort-
gage and upon the certificate of sale; that this amounted to
a redemption; and that thereby plaintiff's debt has been fully
discharged. She also pleaded most of these facts in another
''count'' of her answer (5), and, after averring that the land
was worth much more than the indebtedness secured by the
mortgages thereon, pleaded that if the plaintiff did not re-
deem it was its duty to have done so, and that in such event
she is discharged as surety because plaintiff did not redeem
and preserve its mortgage security. In another ''count''
(6), she pleaded a material and fraudulent alteration of the
mortgage given to secure plaintiff's debt, thus discharging
the same to her prejudice, as the mortgage security was ample
to satisfy and pay the debt.

Plaintiff demurred to the first and fifth so-called counts,

and its demurrer was sustained, and exceptions were taken to the ruling. This much seems to be necessary to an understanding of the rulings and instructions complained of. When the case was commenced, what were known as counts 2, 3, 4 (if there was a 4) and 6 of defendant's answer were unattacked and apparently presented the issues for trial.

I. Over plaintiff's objections, defendant was permitted to introduce testimony as to the value of the Minnesota land. As a part of the objection to this testimony, plaintiff's coun-

1. NEGOTIABLE INSTRUMENTS: evidence: materiality.

sel stated that: "Objected to as immaterial and irrelevant to any issue in the case, the question of value having no bearing on the defense of the alteration of the mortgage or upon the question of deceit in procuring the signature to the note or mortgage, or as to the defense alleged that the note was not signed until a year subsequent and then, as claimed, as part of a different transaction, not to any defense pleaded in the answer. We will admit that the eighty acres were of material value and that block A, lot 1, is of value, so, if there was an alteration of the mortgage, it will invalidate it."

The objection to testimony of a like kind from another witness was: "Objected to as immaterial and irrelevant to any issue in the case, the question of the value of this land having no relevancy or pertinent bearing to any defense pleaded in the case, and the testimony sought to be introduced having a tendency to introduce collateral issues, there being no issue as far as defendant is concerned on account of value, and the plaintiff admitting, as far as the defense pleaded in count 6 of the answer of Katie Eichmeier is concerned, that if, as a matter of fact, there was any alteration in the mortgage marked Exhibit No. 2, that as far as Katie Eichmeier is concerned the mortgage and note would thereby be void."

It seems to us that, under the issues upon which the case was tried, this testimony was immaterial and, if so, highly prejudicial; for the reason that the jury might well have

concluded that as the bank was amply secured it should not compel the defendant to respond and pay the note. *Streeter v. Bank*, 53 Iowa, 177.

II. Some testimony was taken on the issue made by "counts" 2 and 6 of defendant's answer, but the trial court instructed as follows with reference thereto: "3. The de-

2. SAME: withdrawal of issues: instructions.

fendant Katie Eichmeier, by her separate answer has interposed three separate defenses to the claim made against her in plaintiff's petition; but you are instructed that she has introduced no evidence in support of the allegations of her answer, except as to one of her three separate defenses, and you should limit your consideration of her answer and defense to the matters set out in the next succeeding instruction."

Plaintiff asked the following instructions with reference thereto:

1. The defense pleaded by defendant Katie Eichmeier, that the cashier of the plaintiff bank misrepresented to said defendant the extent of August Eichmeier's indebtedness to said bank, and all testimony relating thereto, are hereby withdrawn from your consideration; and in arriving at your verdict you will give no consideration whatever to any testimony relating to any alleged misrepresentation by the cashier of the plaintiff bank as to the extent of August Eichmeier's indebtedness to the plaintiff bank. 2. The defenses pleaded by the defendant Katie Eichmeier, that subsequent to the execution of the mortgage the same was altered by the plaintiff bank by inserting therein the description of additional land, and all testimony relating thereto, are hereby withdrawn from your consideration, and in arriving at your verdict you will give no consideration whatsoever to any testimony relating to such alleged alterations of said mortgage.

These were both refused. In view of the testimony adduced and the complicated and prolix answers, we think the requested instructions should both have been given. Under the facts disclosed, it was not enough to withdraw the issues. The testimony adduced should also have been eliminated and

the jury told not to consider it. *Hammer v. Railroad Co.,* 70 Iowa, 623. The trial court intimated, in its instructions, that no testimony was given or received save upon a single issue in the case; but the record shows to the contrary, and plaintiff's request should have been given in order that the jury should not have been misled by testimony offered in support of another defense.

III. What appellee calls her cross-assignments of error do not meet any of the errors pointed out. They relate to the court's ruling on the demurrer to the first and fifth divisions of defendant's answer and to the exclusion of testimony in support thereof. These were entirely distinct and separate matters, and as appellee did not appeal, they cannot be considered.

3. APPEAL: cross-assignments of error.

Counsel say that, if a reversal is found necessary, these rulings should be reviewed in order that the entire law of the case may be settled. But it is our uniform rule not to consider abstract questions or any matter not properly appealed from.

4. SAME.

The effect of these rulings on plaintiff's demurrer we have no occasion to consider. Defendant, however, was successful upon the trial, and she has as yet no occasion to have the rulings on plaintiff's demurrer to parts of her answer reviewed.

For the errors pointed out, the judgment must be, and it is, *Reversed.*

WEAVER, C. J., and GAYNOR and WITHROW, JJ., concur.